O

# United States District Court
# Central District of California

| | |
|---|---|
| ELKE REICHEL,<br><br>            Plaintiff,<br><br>       v.<br><br>FUNDRAISE UP INC. et al.,<br><br>            Defendants. | Case № 2:24-cv-06244-ODW (PDx)<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS [28]** |

## I.      INTRODUCTION

Plaintiff Elke Reichel claims that her former employer, Defendant Fundraise Up Inc. ("Fundraise"), unlawfully discriminated against her based on her gender and failed to provide overtime wages and uninterrupted rest and meal breaks. (First Am. Compl. ("FAC") ¶¶ 45–100, ECF No. 13.)  On April 18, 2025, Reichel filed the operative Second Amended Complaint.  (Second Am. Compl. ("SAC"), ECF No. 25.) Fundraise moves to dismiss Reichel's first through fourth causes of action pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6).  (Mot. Dismiss ("Motion" or "Mot."), ECF No. 28.)  For the reasons below, the Court **GRANTS** the Motion.[1]

---

[1] Having carefully considered the papers filed in connection with the Motion, the Court deemed the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.

## II. BACKGROUND

All factual references derive from Reichel's Complaint, as well-pleaded factual allegations are accepted as true for purposes of this Motion. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

On or about January 5, 2023, Reichel accepted an Enterprise Account Executive ("EAE") position with Fundraise, a technology company that connects non-profit companies with donors. (SAC ¶¶ 9, 15.) As an EAE, Reichel was expected to find large philanthropic enterprises and persuade them to move to Fundraise's technology and platform. (*Id.* ¶ 17.) When Reichel accepted the position, the only other person at the same level as her was Michael Longenecker. (*Id.* ¶ 15.)

In addition to Reichel's base salary, Fundraise agreed to pay her a commission of ten percent of realized revenue for the accounts she signed. (*Id.* ¶ 16.) She would receive the commission if she was "actively employed on the bonus payout date." (Decl. Ruth Zadikany ISO Mot. ("Zadikany Decl.") Ex. B. ("Acknowledgement of KPIs"), ECF No. 28-3.) Reichel "was projected to receive significant commissions" which she did not receive. (SAC ¶ 41–43.)

Even though Reichel was based in California and Fundraise in New York, nobody told Reichel that she was expected to work Eastern Standard Time business hours and attend daily calls and meetings as early as 5:30 a.m. Pacific Standard Time. (*Id.* ¶ 19.) Reichel spoke to Lauren Casimir, a Human Resources representative, about her issues with needing to attend early morning meetings. (*Id.* ¶¶ 19–20.) Casimir remarked that "it must be difficult for [Reichel] to work East Coast hours given [she] had kids." (*Id.* ¶ 20.) Reichel felt "at odds" with Casimir's "unusual comment." (*Id.*) Fundraise's Chief Executive Officer ("CEO"), Peter Byrnes,[2] later told Reichel that she did not need to attend all the morning meetings. (*Id.*) However, "[e]ager to make

---

[2] The Court notes that the Second Amended Complaint inconsistently refers to Fundraise's CEO as "Peter Byrnes" and "Peter Burns." (SAC ¶¶ 11, 25, 40, 44.) For consistency, the Court will refer to the CEO as "Peter Byrnes" or "Byrnes," with no disrespect intended.

a good impression, and notwithstanding [Byrnes's] instruction, [Reichel] endeavored to attend most of the early morning meetings." (*Id.*)

In April 2023, Casimir told Reichel that "an unknown third party" had related to Casimir that Reichel "had commented about the difficulty of operating in East Coast work hours." (*Id.* ¶ 25.) Casimir also noted that Reichel was in a particularly distinctive position from other staff members "due to her status as a mother." (*Id.*) Casimir then "demanded" that Reichel "never bring the matter up again with anyone" at Fundraise, particularly with Byrnes. (*Id.*) Reichel was "befuddled" by this "aggressive demand," but she "agreed and did not mention it again." (*Id.*) Reichel "now understands" that Casimir's comments were a "warning that if her obligations as a mother interfered with her work obligations, [Fundraise], in particular [Byrnes], would take action against her." (*Id.*)

Around January 1, 2024, Fundraise promoted Longenecker to the newly created Director of Enterprise Sales position. (*Id.* ¶¶ 15, 31.) Longenecker, who "had significantly less experience" than Reichel and "a history of adversarial interactions" with her, became her supervisor. (*Id.* ¶¶ 31–32.) Despite Reichel's qualifications exceeding those of Longenecker, she was not considered for the new position. (*Id.* ¶ 32.) Reichel contents that the "decision to promote a less experienced male colleague . . . highlight[ed] a troubling pattern within the company of favoring male leadership roles over the advancement of high-performing female employees." (*Id.*)

After his promotion, Longenecker required EAEs to keep detailed notes and move old notes to a note-taking software program. (*Id.* ¶ 33.) Reichel considered this an "odd" and "illogical" request that "doubled" her workload and was "unnecessarily redundant." (*Id.*) Nevertheless, she "started implementing this new process" for new notes and updated past notes when her schedule allowed. (*Id.*)

During a call with Longenecker, he complained that Reichel was unavailable during the time she had to pick up her children from school. (*Id.* ¶ 34.) When Reichel raised her concerns with Longenecker "about weekend travel and its impact on her

caregiving responsibilities," he remarked that his wife homeschooled their children. (*Id.* ¶ 36.) Reichel understood Longenecker's comment to imply that "a woman's primary role should be in the home and that wives should prioritize childcare over their careers." (*Id.*) His comment "reinforced the structural bias at [Fundraise] by perpetuating traditional gender roles and devaluing the contributions of working women." (*Id.*) Reichel also contends that male employees in similar sales positions who took off due to childcare duties "were not subject to the same remarks or biases." (*Id.* ¶ 37 (claiming that Brendan Hood, a male employee at Fundraise, also took time off from work due to childcare but never received such remarks from Longenecker).)

On February 9, 2024, Fundraise terminated Reichel. (*Id.* ¶ 41.) Longenecker said she was terminated for poor sales numbers and failure to maintain proper notes. (*Id.*) These reasons "shocked" Reichel, who had never received any complaints about her sales numbers and was on track to meet her sales quota. (*Id.*) At the time of her termination, Reichel anticipated to double her quota, kept compliant notes, received positive performance reviews, and had not been placed on a performance improvement plan or otherwise disciplined. (*Id.* ¶¶ 41, 44.) Reichel alleges that the termination was abrupt and pretextual, motivated by both gender discrimination and an intent to avoid paying her earned commissions. (*Id.* ¶¶ 41, 44, 62.)

Based on these allegations, Reichel initiated this action against Fundraise. (*See* FAC.) Fundraise moved to dismiss the case pursuant to Rule 12(b)(6), (Mot. Dismiss, ECF No. 14), and the Court dismissed Reichel's willful misclassification claim (Count III) with prejudice, and her wrongful termination (Count I) and gender discrimination (Count II) claims with leave to amend, (Order MTD, ECF No. 23).

On April 18, 2025, Reichel filed the operative Second Amended Complaint, reasserting the same causes of action under California law: (1) wrongful termination in violation of public policy; (2) gender discrimination in violation of the Fair Employment and Housing Act ("FEHA"), Cal. Gov't Code § 12940; (3) willful misclassification in violation of California Labor Code section 515; (4) unpaid wages

and commissions; (5) failure to pay overtime in violation of Labor Code section 515; (6) failure to provide uninterrupted rest breaks in violation of Labor Code section 515; (7) failure to provide meal breaks in violation of Labor Code section 515; (8) failure to pay all wages due upon termination in violation of Labor Code section 203; and (9) failure to provide accurate itemized wage statements in violation of Labor Code section 226. (SAC ¶¶ 46–101.)

Fundraise now moves to dismiss the first through fourth causes of action pursuant to Rule 12(b)(6). (Mot.) The Motion is fully briefed. (Opp'n, ECF No. 29; Reply, ECF No. 30.)

### III.    LEGAL STANDARD

A court may dismiss a complaint under Rule 12(b)(6) for lack of a cognizable legal theory or insufficient facts pleaded to support an otherwise cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). To survive a dismissal motion, a complaint need only satisfy the minimal notice pleading requirements of Rule 8(a)(2)—a short and plain statement of the claim. *Porter v. Jones*, 319 F.3d 483, 494 (9th Cir. 2003). The factual "allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). That is, the complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted).

The determination of whether a complaint satisfies the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. A court is generally limited to the pleadings and must construe all "factual allegations set forth in the complaint . . . as true and . . . in the light most favorable" to the plaintiff. *Lee v. City of Los Angeles*, 250 F.3d 668, 679 (9th Cir. 2001). However, a court need not blindly accept conclusory allegations, unwarranted deductions of fact, and unreasonable inferences. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

Where a district court grants a motion to dismiss, it should generally provide leave to amend, unless it is clear the complaint could not be saved by any amendment. *See* Fed. R. Civ. P. 15(a); *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Thus, leave to amend "is properly denied . . . if amendment would be futile." *Carrico v. City & County of San Francisco*, 656 F.3d 1002, 1008 (9th Cir. 2011).

## IV. DISCUSSION

Fundraise moves to dismiss Reichel's claims for gender discrimination under FEHA, wrongful termination, willful misclassification, and unpaid commissions pursuant to Rule 12(b)(6). (Mot. 10–18.)

### A. Wrongful Termination and Gender Discrimination (Counts I and II)

Reichel alleges that Fundraise violated the FEHA by discriminating against her based on her gender. (SAC ¶¶ 57–66.) She also alleges that Fundraise wrongfully terminated her "because [she] was a woman and a working mother," in violation of public policy. (*Id.* ¶¶ 46–56.) The wrongful termination claim is premised on her FEHA gender discrimination claim. (*See id.*) Fundraise moves to dismiss both claims. (Mot. 10–17.) The Court previously dismissed Reichel's FEHA and wrongful termination claims on the grounds that (1) Reichel did not "plausibly allege that similarly situated males were treated more favorably than her"; (2) her comparisons to other male employees failed to show discriminatory conduct; and (3) Longenecker's promotion and comments were not sufficient to "support an inference of discrimination." (Order MTD 6–8.).

FEHA prohibits terminating an employee based on, among other things, "gender, gender identity, [or] gender expression." Cal. Gov't Code § 12940(a). To survive a motion to dismiss under the FEHA, a plaintiff must allege that "(1) she belonged to a protected class; (2) she was performing competently in her position; (3) she was subject to an adverse employment action; and (4) some other circumstances that suggest discriminatory motive." *Cattoche v. United Airlines, Inc.*,

No. 22-16400, 2023 WL 6803540, at *2 (9th Cir. Oct. 16, 2023) (citing *Guz v. Bechtel Nat'l Inc.*, 24 Cal. 4th 317, 355 (2000)). The dismissal of a plaintiff's FEHA claim "is fatal" to the plaintiff's claim for wrongful termination in violation of public policy when the public policy upon which the plaintiff relies is FEHA. *Nielsen v. Trofholz Techs., Inc.*, 470 F. App'x 647, 649 (9th Cir. 2012).

Reichel claims she was fired "because she was a woman and a working mother." (SAC ¶ 44.) The parties do not seriously dispute that she plausibly pleads the first three elements of a FEHA claim. (*See* Mot. 11–16; Opp'n 6–17; Reply 4–8.) The Court already ruled that the first three elements of Reichel's FEHA discrimination claim are met. (Order MTD 6.) As such, the Court will not repeat its analysis of those elements here.

The only element in dispute is thus the fourth element—discriminatory motive. *Cattoche*, 2023 WL 6803540, at *2. A plaintiff may plead a discriminatory motive under FEHA by showing that similarly situated employees outside of her protected class "were treated more favorably, or other circumstances surrounding the adverse employment action give rise to an inference of discrimination." *Peterson v. Hewlett-Packard Co.*, 358 F.3d 599, 603 (9th Cir. 2004). Reichel seems to advance three reasons why she sufficiently pleads discriminatory motive: (1) Fundraise failed to consider Reichel for promotion, advancing a male employee instead; (2) similarly situated males at Fundraise were treated more favorably than Reichel; and (3) Reichel was treated differently based on her status as a woman and working mother.

Reichel alleges that Fundraise did not "seriously consider[]" her for promotion to the newly created Director of Enterprise Sales position, despite her "extensive experience," "flawless record," and "superior performance and qualifications." (SAC ¶ 32.) Instead, Fundraise promoted Longenecker, a male colleague who had "significantly less experience" than her, which Reichel contends demonstrates discriminatory motive. (*Id.* ¶¶ 31–32; Opp'n 13–14.)

1    But Reichel, again, fails to raise any facts to suggest similarities within the application process or that she even applied for the promotion. *See Freeman v. Cnty. of Sacramento Dep't of Hum. Assistance*, No. 2:19-cv-02418-KJM-CKD PS, 2020 WL 2539268, at *3 (E.D. Cal. May 19, 2020) (granting motion to dismiss where "plaintiff does not allege that these other individuals applied for the same positions as him"). A plaintiff states a claim for relief only "if the trier of fact could reasonably infer that promotions were not awarded on a competitive basis." *Lyons v. England*, 307 F.3d 1092, 1114 (9th Cir. 2002). Such an inference is not possible here because Reichel does not allege that Fundraise posted an opening or accepted applications. While Longenecker's promotion and Reichel's termination took place close in time, Reichel does not allege how these decisions were related to one another, such as to support a theory of discriminatory termination.

Reichel also alleges that there was "a troubling pattern within the company of favoring male leadership roles over the advancement of high-performing female employees." (*Id.* ¶ 32.) She claims that "she was unexpectedly required to attend several conferences and meetings," while "[m]ale colleagues in similar positions were not subjected to the same demands." (*Id.* ¶ 35.) For example, she alleges that male associates such as "Larry," "Chaz," and Hood, were not required to attend additional conferences and meetings. (*Id.*) She also claims that Hood openly took time off from work due to childcare duties but received no reprimand, while she was criticized for similar needs. (*Id.* ¶ 37; Opp'n 7–8.) However, it is unclear how Reichel, an EAE, and male colleagues working in the "Partnership department," are similarly situated. (*See id.* ¶¶ 15, 35.) As such, Reichel offers little information regarding "the alleged comparators or other relevant facts, making it difficult to draw any inferences as to whether those employees were indeed similarly situated or treated more favorably." *Cattoche*, 2023 WL 6803540, at *2.

Even considering the allegations that the identified male employees were similarly situated, they do not support an inference of discriminatory motive. (SAC

¶¶ 57–66.) Reichel does not connect the need to attend additional meetings to her termination or establish that she was required to attend these meetings *because of* her gender. To the contrary, when Byrnes instructed Reichel that she "was not required to attend all of the morning meetings," she "endeavored to attend most of the early morning meetings" because she was "[e]ager to make a good impression." (*Id.* ¶ 20.)

To support a plausible claim that male employees were treated more favorably, Reichel next relies on Casimir's statements. She alleges that Casimir warned her about Byrnes' opinion regarding "female employees and their ability to prioritize work," demanded that Reichel never mention her childcare obligations again, and commented on Reichel's "distinction" from other staff members due to her "status as a mother." (*Id.* ¶¶ 25, 44.) Reichel also relies on Longenecker's remark that his wife homeschooled their children. (*Id.* ¶ 36.) But Reichel fails to show *how* these comments supported the decision to terminate her. Absent additional facts, the Court is unable to infer that these comments plausibly allege circumstances giving rise to an inference of discriminatory motive.

Taken together, Reichel's allegations do not adequately support a claim for discrimination under FEHA and wrongful termination in violation of public policy. As such, the Court finds that Reichel has not cured the deficiencies the Court previously identified. (Order MTD 5–10.) While Reichel identifies some other male colleagues at Fundraise, she does not allege that these male associates were similarly situated or that they were treated more favorably. As such, Reichel does not plead more than mere "labels and conclusions." *Twombly*, 550 U.S. at 555.

In her opposition, Reichel requests leave to amend if the Court finds that her claims are not sufficiently pleaded. (Opp'n 23.) Repeated failure to adequately amend signals to the Court that any further amendments would be futile. *William O. Gilley Enters., Inc. v. Atl. Richfield Co.*, 588 F.3d 659, 669 n.8 (9th Cir. 2009) (finding plaintiff's repeated failure to present new facts to state a claim suggested that it would be futile to offer him another chance to do so). A district court's discretion to

deny leave to amend is "particularly broad" where the plaintiff has previously amended the complaint. *Sisseton–Wahpeton Sioux Tribe v. United States*, 90 F.3d 351, 355 (9th Cir.1996) (quoting *Ascon Props., Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1160 (9th Cir.1989)). On September 6, 2024, Reichel voluntarily amended her Complaint. (*See generally* FAC.) The Court subsequently granted her leave to amend to cure pleading deficiencies. (Order MTD 5–10.) As Reichel already had two opportunities to adequately amend but failed to do so, the Court finds that further amendment would be futile. Accordingly, the Court **GRANTS** Fundraise's Motion and **DISMISSES** Reichel's first and second causes of action **WITH PREJUDICE** and **WITHOUT LEAVE TO AMEND**.

**B.     Willful Misclassification (Count III)**

Fundraise moves to dismiss Reichel's willful misclassification claim on the basis that it is not a standalone cause of action. (Mot. 18.) In her opposition, Reichel withdrew this claim. (Opp'n 22.) Furthermore, the Court dismissed without leave to amend Reichel's willful misclassification claim. (Order MTD 11–12, 17). As such, the Court need not address the claim again here.

**C.     Unpaid Commissions (Count IV)**

Fundraise moves to dismiss Reichel's claim for unpaid commissions. (Mot. 17–18.) Reichel alleges that Fundraise agreed to pay her commissions based on the accounts she signed but failed to do so. (SAC ¶¶ 72–76.) The Acknowledgement of KPIs indicates that, to receive commissions, Reichel "must be actively employed on the bonus payout date," and that "variable compensation" would be provided in the form of "10% realized revenue commission for one year after Closed/Won." (*Id.*) Reichel alleges that prior to her termination, she "was projected to receive significant commissions." (SAC ¶¶ 42, 74.) However, because commissions were paid monthly over twelve months, Reichel "was not poised to receive her commissions right away." (*Id.* ¶ 42.) Reichel alleges that Fundraise fired her, in part, to avoid paying her commissions. (*Id.* ¶¶ 42–44, 53, 74.)

1    The Court previously dismissed this claim with leave to amend. (Order MTD 11.) The Court held that Reichel "does not actually allege that Fundraise ever owed her unpaid commissions," "that she realized any revenue for Fundraise," or "that she was actively employed on the bonus payout date." (*Id.*) Even though the Court granted Reichel leave to amend, she added nothing to substantiate her claim for unpaid commissions. (*Compare* FAC ¶¶ 71–75, *with* SAC ¶¶ 72–76.)

Reichel adds only that, prior to her termination, she closed deals with clients such as "Volunteers of America, Daystar Canada, and Benny Hinn," and that she received no commissions for these closed deals. (SAC ¶ 43.) While this fact may support a claim for potential entitlement to commissions, that is not the same as alleging facts sufficient to support a claim that Reichel was *actually owed* any commissions at the time of her termination. (Mot. 18.) Reichel appears to claim that she was entitled to vested commissions on the deals she closed before her termination. (*See* SAC ¶ 74.) But she fails to allege that she realized any revenue for Fundraise such that her rights to commissions vested, or that she was "actively employed on the bonus payout date." (*See generally* SAC; *see also* Acknowledgement of KPIs 1.)

Despite this Court's clear direction, Reichel fails again to provide sufficient factual detail to support her claim for unpaid commissions. (*See* Order MTD 10–11.) Therefore, she fails to cure the previously specified deficiencies and again relies on conclusory allegations that are insufficient to support her claim. *See Salameh v. Tarsadia Hotel*, 726 F.3d 1124, 1133 (9th Cir 2013) (finding that leave to amend is properly denied when a plaintiff fails to properly plead a claim, is given specific instructions on how to amend, and had ample opportunity to amend the complaint).

Accordingly, as Reichel has had ample opportunity to adequately amend the pleadings but failed to cure the specified deficiencies as to this claim, the Court **DISMISSES** Reichel's cause of action for unpaid commissions **WITH PREJUDICE** and **WITHOUT LEAVE TO AMEND**.

## V.   CONCLUSION

For the reasons discussed above, the Court **GRANTS** Fundraise's Motion to Dismiss.  (ECF No. 28.)  In particular, the Court **DISMISSES WITH PREJUDICE** and **WITHOUT LEAVE TO AMEND** Reichel's wrongful termination (Count I), gender discrimination (Count II), and failure to pay commissions (Count IV) causes of action.

Fundraise shall answer Reichel's Second Amended Complaint as to the remaining causes of action within **twenty-one days** of the date of this order.

**IT IS SO ORDERED.**

September 16, 2025

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**